IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DCK/TTEC, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | No. |
| v. | ) ) | |
| POSTEL INDUSTRIES, INC., a Texas corporation. | ) ) ) | Jury Trial Demanded |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff, dck/TTec, LLC, by and through its attorneys, Leech Tishman Fuscaldo & Lampl, LLC, brings this action against Defendant, Postel Industries, Inc., asserting as follows:

### PARTIES

1. Plaintiff, dck/Ttec LLC ("dck") is a limited liability company organized and existing under the laws of Delaware, with a principal place of business in Honolulu, Hawaii. None of dck's members are citizens of Texas. dck provides general contracting services for military projects, and has significant operations based in Large, Pennsylvania.

2. Defendant, Postel Industries, Inc. ("Postel") is a corporation organized and existing under the laws of Texas, with a principal place of business in Houston, Texas. Postel provides steel fabrication, erection, procurement, and design services for contractors and owners on projects involving steel materials.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) as a substantial part of the events giving rise to the claims set forth herein occurred in this judicial district.

## FACTS

5. On or about May 19, 2011, dck and Postel executed a Letter of Intent/Commitment ("LOI/C"). A true and correct copy of the LOI/C with its attachments is attached hereto as Exhibit "A".

6. The LOI/C was negotiated and executed in dck's offices in Large, Pennsylvania by Eugene Bucci, Senior Vice President of dck, and Jim Prado, Postel's Vice President of Sales.

7. The LOI/C was executed by the parties in anticipation of dck being awarded a contract with the United States Navy, within 90 days of the LOI/C, to construct aircraft maintenance hangers at the Marine Corps Air Station in Yuma, Arizona (the "Project"). See Exhibit "A" at p.1.

8. The LOI/C was expressly conditioned on dck being awarded the Project. See id. at p. 2.

9. dck was awarded the contract for the Project on June 9, 2011.

10. The LOI/C expressly provides that dck intended to enter into a Subcontract Agreement with Postel "for the Work required to furnish and install the structural steel, steel decks, miscellaneous metal fabrications, and metal stairs, ladders, [and] railings" on the Project.  See id. at p. 1.  Attachment #2 to the LOI/C set forth the specific scope of the work that Postel agreed to perform.

11. The LOI/C further provides that Postel's "Work shall include all labor, materials, fabrication, hoisting, equipment and management necessary to perform… **in compliance with the current schedule** and all drawings, plans and specifications" attached to the LOI/C.  See id. at p. 1.  (emphasis added).

12. The Navy's plans for the Project included an aggressive contractual schedule for the completion of Hangar 447/447A.  Postel was notified of this aggressive contractual schedule, and, pursuant to the LOI/C, Postel agreed to "take whatever means necessary, including working overtime, to complete the P447/447A hangar installation work **within 50 calendar days**."  See id. at Attachment #2, ¶ D7.  (emphasis in original).

13. In exchange for the work Postel agreed to perform within the timeframe established by the Navy's schedule, dck agreed to pay Postel a base price of $7,834,000, with four options that could increase the cost of the subcontract to $8,835,000.  See id. at p. 1.

14. Postel further agreed to proceed with shop drawings required for the Project.  The cost for these shop drawings was included in the price dck agreed to pay under the LOI/C.  See id. at p. 2.

15. After dck was awarded the Project, it submitted a draft subcontract ("Subcontract") to Postel for comments. On or about July 18, 2011, having received no response to the Subcontract it had submitted, dck forwarded a copy of the Subcontract for execution by Postel. The terms of the Subcontract were identical to the LOI/C with regard to contract price and the 50 day requirement for hangar installation work.

16. On or about July 28, 2011, Postel forwarded comments to dck on the Subcontract. This was the first notice received by dck that Postel had any objections to any of the terms of the Subcontract. Although Postel's comments included proposed changes to the scope of work, Postel did not raise any objection to the contract price or to the 50 day requirement for the hangar installation work.

17. After Postel submitted its comments, dck and Postel negotiated the terms of the Subcontract.

18. On August 23, 2011, Postel sent a notice to dck indicating that Postel "must decline dck's offer of award" with regard to the project. Postel claimed that an impasse had been reached regarding the negotiation of a viable agreement.

19. Subsequent to the August 23, 2011 notice, Postel advised dck, for the first time, that it would perform the negotiated scope of work but only for a significantly higher price. dck had not pursued negotiations with other potential subcontractors in reliance on Postel's agreement to the material terms, including price and timing. Accordingly, dck reluctantly agreed to revisit the price term it had agreed to pay Postel in order to insure that the work would stay on schedule. At that time, Postel had not raised any objection to the 50 day requirement for the hangar work.

20. On or about August 30, 2011, following further negotiations about the contract price, Postel notified dck, for the first time, that it would be unable to comply with the 50 day requirement for the hangar work. Postel initially indicated that it would need at least 105 days to comply, but later indicated that it would require a minimum of 75 days.

21. Postel's inability to comply with the time schedule would have significant financial impact on dck, jeopardize dck's relationship with the Department of Navy, and jeopardize the schedule for the project.

22. In light of Postel's breach of the terms of the LOI/C, including its failure to comply with the contract price and the 50 day requirement for the hangar installation work, dck notified Postel on or about September 9, 2011 that it would seek to find a qualified subcontractor who was able to comply with those terms.

23. On or about September 15, 2011, in order to mitigate its damages and to comply with the requirements established by the Navy, dck engaged a substitute subcontractor who was able to comply with the 50 day requirement for the hangar work.

24. For essentially the same base scope of work, including the 50 day requirement for the hangar work, the contract price with the substitute contractor is $9,975,000.00.

25. dck has not yet been able to reach agreement with another subcontractor with regard to the four options contained in the LOI/C. It is believed and therefore averred that dck will be required to pay a higher price for those options than the price set forth in the LOI/C.

## COUNT I
## BREACH OF CONTRACT

26. The averments of paragraphs 1 through 25 above are incorporated herein by reference.

27. The LOI/C constitutes a binding written contract between the parties supported by consideration.

28. Pursuant to the contract, Postel was required to perform work and provide materials in accordance with the scope of work outlined in the LOI/C and its attachments.

29. Postel breached the terms of the contract by failing or refusing perform the work as agreed to in the LOI/C, including the contract price and the 50 day requirement for the hangar installation.

30. As a direct and proximate result of Postel's breach of contract, dck was forced to hire an alternative subcontractor for a base contract price of $9,975,000.00.

31. Consequently dck has suffered damages of at least $1,140,000.00. Damages with respect to the options contained in the LOI/C remain pending.

## COUNT II
## PROMISORY ESTOPPEL

32. The averments of paragraphs 1 through 31 above are incorporated herein by reference.

33. Postel promised dck, by executing the LOI/C and through verbal assurances prior to execution of the LOI/C, that it would perform the work set forth in the LOI/C and its attachments for the contract price and within the time period established therein.

34.     Postel knew or should have known that dck would rely on its promise to perform.

35.     It is custom and practice in the industry for contractors to rely on similar representations made by subcontractors in the bidding process.

36.     In reliance on Postel's promise to perform the work at the price and within the timeframe established in the LOI/C, dck did not negotiate or execute an agreement with another subcontractor capable of performing the steel work in accordance with the plan until after Postel breached.

37.     dck reliance on Postel's promise to perform has resulted in dck incurring a higher cost for the work than it otherwise would have.

38.     Consequently, dck has suffered damages in the amount at least $1,140,000.00.  Damages with respect to the options contained in the LOI/C remain pending.

39.     Injustice to dck can be avoided only by enforcing Postel's promise to perform by requiring Postel to pay the difference in the contract price set forth in the LOI/C and the contract price dck is forced to pay to its substitute subcontractor.

## PRAYER FOR RELIEF

WHEREFORE, dck/Ttec, LLC respectfully requests this Court to enter judgment in its favor and against Postel Industries, Inc., the amount in excess of $75,000.00, in addition to pre and post-judgment interest, costs, and such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

**LEECH TISHMAN FUSCALDO & LAMPL, LLC.**

*/s/ David V. Weicht*
David V. Weicht
Pa. I.D. No. 65191
Ryan O. Hemminger
Pa. I.D. No. 200809
525 William Penn Place, 30th Floor
Pittsburgh, Pennsylvania 15219
(412) 261-1600
dweicht@leechtishman.com
rhemminger@leechtishman.com

Attorneys for Plaintiff,
dck International SKN, Limited